UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROYAL SMIT TRANSFORMERS                         CIVIL ACTION
BV ET AL.

VERSUS                                                               No. 16-14647

HC BEA-LUNA M/V ET AL.                           SECTION I

## ORDER AND REASONS

Defendant Central Oceans USA, LLC ("Central Oceans") has filed a motion[1] to transfer venue pursuant to 28 U.S.C. § 1404(a). Central Oceans requests a transfer of this entire case to the U.S. District Court for the Western District of Virginia, Charlottesville Division. If the entire case cannot be transferred, Central Oceans asks that the claims against it be severed and transferred. The motion is opposed by the plaintiffs and by the other defendants. For the following reasons, the Court transfers the plaintiffs' claims against Central Oceans to the Western District of Virginia.

### I.

The plaintiffs claim to be the owners and/or insurers of three electrical transformers that were allegedly damaged while in transit from Rotterdam, the Netherlands, to St. Gabriel, Louisiana.[2] The plaintiffs contracted with Central Oceans for the transport of the transformers. Central Oceans, in turn, entered into

---

[1] R. Doc. No. 5.
[2] St. Gabriel is in Iberville Parish which is located in the Middle District of Louisiana. No party has challenged venue in this district.

contracts with the other defendants to provide transportation services as follows: ocean carriage aboard the MV HC BEA-LUNA by defendant Onego Shipping & Chartering BV ("Onego Shipping"); rail carriage by defendant Illinois Central Railroad Company ("Illinois Central"); and truck carriage by defendant Berard Transportation, Inc. ("Berard"). Onego Shipping transported the transformers from a port in the Netherlands to the Port of New Orleans, Illinois Central moved the transformers from the Port of New Orleans to St. Gabriel by rail, and Berard conveyed the transformers by truck from the rail cars in St. Gabriel to the Entergy substation in St. Gabriel where they were to be installed. The plaintiffs claim that after the transformers were delivered, an inspection determined that the transformers sustained at least $1.6 million in damages as a result of excessive vibration during shipment.

## II.

The plaintiffs' contract with Central Oceans contains a forum-selection clause which provides:

**5. Law and Jurisdiction**

Disputes arising under this MT Bill of Lading shall be determined by the courts and in accordance with the law at the place where the MTO [i.e., Central Oceans] has his principal place of business.

R. Doc. No. 5-4, at 2. No one disputes the validity of the forum-selection clause as to disputes arising between the plaintiffs and Central Oceans. No one disputes that the clause is mandatory as opposed to permissive. No one disputes that Central Oceans has its principal place of business in the Western District of Virginia. Nevertheless, the plaintiffs and the other defendants argue that the private interests of the parties

2

and the interests of the public require that the litigation be maintained in this Court notwithstanding the forum-selection clause.

First, the defendants opposing transfer stress that they are not subject to the forum-selection clause and argue that they are not subject to personal jurisdiction in the Western District of Virginia. *See* R. Doc. No. 21, at 1 ("Most importantly, no district court in Virginia could exercise personal jurisdiction over Berard because of the absolute lack of contacts between Berard and Virginia both generally and specific to this dispute."); R. Doc. No. 23, at 3 ("[T]he Western District of Virginia cannot exercise personal jurisdiction over Onego, since Onego lacks the requisite minimum contacts with Virginia."); R. Doc. No. 24, at 2 (Illinois Central "denies that it is subject to general personal jurisdiction in the . . . the Western District of Virginia as [Illinois Central] has not in any way purposefully availed itself of the privilege of conducting activities within Virginia.").[3]

Second, the parties opposing transfer argue that trying the case in the Eastern District of Louisiana will be more convenient and more efficient than trying the lawsuit in Virginia. According to Onego Shipping, because the transformers were

---

[3] The plaintiffs also argue that the Western District of Virginia would lack *in rem* jurisdiction over the M/V HC BEA LUNA because there are no ports in that district which are capable of accommodating the M/V HC BEA LUNA. *See* R. Doc. No. 22, at 2-3. The Court does not engage that argument, however, as the plaintiffs admit that the vessel has already left the Eastern District of Louisiana. *See* R. Doc. No. 22, at 3. Thus, at the present time, this Court does not have jurisdiction over the M/V HC BEA LUNA either. *See Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-3209, 2011 WL 290827, at *2 (E.D. La. Jan. 25, 2011) (Vance, J.) (observing that Rule C(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims requires the filing of a verified complaint stating that the property that is the subject of the *in rem* action "is within the district or will be during the pendency of the action").

3

delivered to the Port of New Orleans in this district and then transported to St. Gabriel in the Middle District of Louisiana, any surveys and/or inspections of the cargo would "presumably," therefore, have been performed in New Orleans and St. Gabriel, *see* R. Doc. No. 23, at 5, and discovery would be more convenient. Moreover, although the lawsuit involves parties from around the world, many of the witnesses and companies that actually handled the cargo—the stevedores, the railroad, the trucking company, and Entergy Louisiana, LLC—are likely located in Louisiana. *See id.* The cost of obtaining testimony may thus be lower in the Eastern District of Louisiana. *See id.*; *see also* R. Doc. No. 21, at 6 ("Not a single portion of this voyage even remotely concerned the Commonwealth of Virginia."). Further, the parties will have the ability to compel the attendance of potential non-party witnesses at trial if the litigation remains here. *See* Fed. R. Civ. P. 45(c)(1). They may not be able to do so if the case is transferred.[4]

Central Oceans responds that the plaintiffs knew at the time they entered into the contract that Central Oceans would need to contract with other companies in order to fulfill its obligations. The contract itself provides that all of its provisions would be enforceable notwithstanding that eventuality. The contract reads:

---

[4] The parties opposing transfer further observe that the contract between Berard and Central Oceans also contains a forum selection clause which provides that any disputes between Central Oceans and Berard should be decided in the Western District of Louisiana or in state court in Iberia Parish. *See* R. Doc. No. 17-2, at 4. Central Oceans argues that its forum selection clause with Berard is irrelevant because it only applies to disputes between Central Oceans and Berard, and no cross claims have been asserted between the parties in this case.

4

I. **General Provisions**

1. **Applicability**

   The provisions of this Contract shall apply irrespective of whether there is a unimodal or a Multi Modal Transport Contract involving one *or several modes of transport*.

R. Doc. No. 17-1, at 2 (emphasis added). Central Oceans argues that plaintiffs cannot undermine the enforceability of the forum-selection clause by invoking an eventuality which was foreseen by the parties. *See* R. Doc. No. 17, at 3.

Central Oceans does not, however, dispute that the Western District of Virginia may lack personal jurisdiction over some of the parties. In response to the Court's order directing Central Oceans to brief the personal jurisdiction issue, Central Oceans—for reasons the Court cannot understand—simply stated that "if this Court cannot transfer the entire case to the United States District Court for the Western District of Virginia because that court may not be able to exercise personal jurisdiction over all the defendants, this Court may sever the claims against Central Oceans and transfer those claims." *See* R. Doc. No. 25, at 1. The brief fails to otherwise respond to the other defendants' allegations that personal jurisdiction is lacking.

### III.

28 U.S.C. § 1404(a) permits a district court to transfer any civil action "[f]or the convenience of the parties and witnesses, in the interest of justice" to any other district "where it might have been brought." The "where it might have been brought" language refers to the statutes governing jurisdiction and venue in the federal courts. *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964). Thus, a transfer is not permitted

5

under section 1404(a) unless the transferee court would have had subject matter jurisdiction over the lawsuit, all defendants would have been subject to personal jurisdiction in the transferee court, and venue would have been proper in the transferee court. *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds*, *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987); *see also Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 592 (E.D. La. 2013) (Africk, J.). "If, however, suit might have been brought against one or more defendants in the court to which transfer is sought, the claims against those defendants may be severed and transferred while the claims against the remaining defendant, for whom transfer would not be proper, are retained in the original court." *See id.* (citation omitted).

Berard, Illinois Central, and Onego Shipping are not bound by the forum-selection clause in the contract. As explained above, Central Oceans does not argue that Virginia courts would have personal jurisdiction over the other defendants. Central Oceans has therefore waived any arguments in that regard.

## IV.

"For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls." *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014). The analysis becomes more difficult, however, when not all parties to the lawsuit have entered into a forum-selection agreement. In the *Rolls Royce* case, the Fifth Circuit considered what to do in such a situation. The Fifth Circuit explained that there are essentially three options: (1) transfer the entire case; (2) sever and transfer only the parties bound by the forum-selection

6

clause; or (3) maintain the entire lawsuit in this district notwithstanding the forum-selection clause.[5] *See id.*

Pursuant to *Rolls Royce*, the severance-and-transfer inquiry in situations where some but not all parties have entered into a forum selection clause is as follows: First, consistent with the Supreme Court's decision in *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568 (2013), "the private factors of the parties who have signed a forum agreement must, as [a] matter of law, cut in favor of severance and transfer to the contracted for forum." *Id.* at 681. Next, the Court "must consider the private factors of the parties who have not signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis." *Id.* Finally, the Court must ask "whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit." *Id.* "In so determining, the district court should consider whether there are procedural mechanisms that can reduce the costs of severance, such as common pre-trial procedures, video depositions, stipulations, etc." *Id.*

The private interest factors the Court should consider are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). As the parties

---

[5] The Court observes that the first option is not available in this case, as Central Oceans waives any argument that Virginia courts would have personal jurisdiction over all parties.

7

Case 3:17-cv-00017-GEC   Document 31   Filed 03/02/17   Page 7 of 13   Pageid#: 273

defying the forum-selection clause, the plaintiffs bear the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Atlantic Marine*, 134 S. Ct. at 581.

In applying the *Rolls Royce* methodology, this Court is mindful of the Fifth Circuit's instruction that "[w]hile judicial economy is not the sole consideration for a district court facing a severance-and-transfer motion, it retains a cardinal role." *See Rolls Royce*, 775 F.3d at 681. As such, while "[a] properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts, . . . the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *Id.* at 679. Still, "public factors, standing alone, [are] unlikely to defeat a transfer motion." *Id.* (citing *Atlantic Marine*, 134 S. Ct. at 582).

## V.

First, as signatories to the forum-selection clause, the private interest factors of the plaintiffs and Central Oceans weigh in favor of severance and transfer as a matter of law. *Rolls Royce*, 775 F.3d at 681. However, the second consideration, i.e. the private interest factors of Berard, Illinois Central, and Onego Shipping, weighs in favor of maintaining all of the claims here. *See id.* As explained below, Berard, Illinois Central, and Onego Shipping have much stronger contacts with Louisiana than they do with Virginia. Those contacts make Louisiana a more convenient forum for the dispute.

Berard is a Louisiana corporation with its principal place of business in Louisiana. *See* R. Doc. No. 21-1, at 1 ¶ 3. The transport that Berard provided for the

8

Case 3:17-cv-00017-GEC Document 31 Filed 03/02/17 Page 8 of 13 Pageid#: 274

transformers occurred entirely in St. Gabriel, Louisiana. *See* R. Doc. No. 21-1, at 2 ¶ 7. Each of the owners and officers of Berard who were involved in the contract at issue and who Berard reasonably anticipates will be witnesses in this matter reside in Louisiana. *See* R. Doc. No. 21-1, at 10 ¶ 10-11. Berard has no offices in Virginia, *see* R. Doc. No. 21-1, at 2 ¶ 4, it does not conduct business in Virginia, *see* R. Doc. No. 21-1, at 2, and it does not advertise or seek business in Virginia, *see* R. Doc. No. 21-1, at 3 ¶ 9.

Illinois Central is an Illinois corporation with its principal place of business in Illinois. *See* R. Doc. No. 24-1, at 1 ¶ 3. Illinois Central operates a railroad in Louisiana, where it "employs employees, owns land, tracks, rights-of-way, facilities and structures and where it files tax returns and pays property taxes." *See* R. Doc. No. 24-1, at 1 ¶ 3. The transport Illinois Central was hired to perform in this case began at the Port of New Orleans, Louisiana and ended in St. Gabriel, Louisiana. *See* R. Doc. No. 1, at 5 ¶ 17. Illinois Central does not operate a railroad in Virginia, it owns no property and has no employees in Virginia, and it does not do business and is not licensed to do business in Virginia. *See* R. Doc. No. 24-1, at 2 ¶ 4.

Onego Shipping is organized and headquartered in the Netherlands. *See* R. Doc. No. 23-1, at 1 ¶ 3. Onego Shipping provides chartering services across the Atlantic Ocean, and it makes use of American ports at Albany, Baltimore, New Orleans, and Houston. *See* R. Doc. No. 23-1, at 2 ¶ 5. While Onego Shipping has contracted with Central Oceans "a few times," it has never conducted business within Virginia. *See* R. Doc. No. 23-1, at 3 ¶ 10-12. The majority of Onego Shipping's business in the United States "comes from the southern part of the country, as a

result of the location of its liner service" in the Gulf of Mexico. *See* R. Doc. No. 23-1, at 3 ¶ 14. Onego Shipping delivered the transformers at issue to Illinois Central at the Port of New Orleans.

These connections to Louisiana—and the lack of connections to Virginia— demonstrate that it will be more convenient for Berard, Illinois Central, and Onego Shipping to try the case in this district. Relevant evidence is more likely to be found in Louisiana, the cost of attendance for witnesses will be less in Louisiana, and other practical considerations that make trial of a case expeditious and less expensive weigh in favor of maintaining the litigation in Louisiana. Further, as previously mentioned, the parties will have the ability to compel the attendance of possible non-party witnesses at trial if the litigation remains in this state. *See* Fed. R. Civ. P. 45(c)(1). They may not be able to do so if the case is transferred to Virginia.

After weighing the first two factors, the Court determines at this point in the analysis that the best course of action is to sever and transfer the claims against Central Oceans. That result is desirable for at least three reasons. First, it accounts for the private interests of the plaintiffs and Central Oceans and gives those parties the benefit of their bargain. Second, maintaining the claims against Berard, Illinois Central, and Onego Shipping in Louisiana reduces the cost and difficulty associated with the litigation for those parties. Third, to the extent that there will be non-party witnesses involved in this lawsuit, Louisiana will be a more convenient forum.

The Court recognizes that dividing this litigation may create some difficulties. Nevertheless, the Court can avoid severance and transfer only when the preliminary considerations outlined above are "outweighed by the judicial economy considerations

10

of having all claims determined in a single lawsuit." *See Rolls Royce*, 775 F.3d at 681. The interest in judicial economy does not outweigh the parties' private interests under these circumstances.

## VI.

As previously stated, this Court need also balance judicial economy considerations. The U.S. Supreme Court recently instructed in *Atlantic Marine* that only in "extraordinary circumstances" should a valid forum-selection clause not be given effect. *Atlantic Marine*, 134 S. Ct. at 581. "A properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts." *In re Rolls Royce Corp.*, 775 F.3d at 679.

Although this Court is reluctant to invite the difficulty of divided litigation where it can be avoided, the Court is equally disinclined to deny the plaintiffs and Central Oceans the benefit of their bargain. As the Supreme Court explained in *Atlantic Marine*, valid forum-selection clauses represent "the parties' agreement as to the most proper forum," and giving them effect protects the "legitimate expectations" of the parties and "furthers vital interests of the justice system." *Atlantic Marine*, 134 S. Ct. at 581. "When parties have contracted in advance to litigate disputes in a particular forum . . . courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 584.

Central Oceans rightly points out that the plaintiffs and Central Oceans were aware at the time they entered into their contract that its performance would require Central Oceans to enter into additional agreements. *See* R. Doc. No. 17-1, at 2. Denying a motion to transfer based upon an eventuality which was foreseen by the

11

parties—namely, the involvement of other companies in the delivery of the transformers—would undermine Central Oceans' legitimate expectations regarding where potential contract disputes with the plaintiffs would be litigated. Further, the enforceability of a forum-selection clause should not normally turn on the presence of other parties in the litigation. To hold otherwise is to invite "easy manipulation," as "any clever party to a lawsuit can readily join another party or individual in an attempt to avoid the forum selection clause." *In re Rolls Royce Corp.*, 775 F.3d at 685 (Jones, J., concurring).

Though the Court is mindful that judicial economy retains a "cardinal role" in the severance-and-transfer analysis, *see id.* at 681, the Court remains unconvinced that sufficient "extraordinary circumstances" exist in this case to warrant denial of Central Oceans' requested transfer, *see Atlantic Marine*, 134 S. Ct. at 581. After all, while there are certainly difficulties associated with the transfer, they are the run-of-the-mill difficulties which will always exist in such scenarios. If the interest in judicial economy trumped the forum-selection agreement in this case, it is difficult to see why it would not do so in every case.

In addition, the Court is confident that the parties can alleviate the burden of divided litigation through procedural mechanisms that can reduce the costs of severance, "such as common pre-trial procedures, video depositions, stipulations, etc." *In re Rolls Royce Corp.*, 775 F.3d at 681. The Court invites the parties to consider taking such steps on their own initiative, and, if necessary, to propose a common discovery schedule to the Court which will be carefully considered.

## VII.

For all of the foregoing reasons,

**IT IS ORDERED** that the motion to transfer is **GRANTED IN PART**. All of plaintiffs' claims against defendant Central Oceans are hereby **SEVERED** and **TRANSFERRED** to the U.S. District Court for the Western District of Virginia, Charlottesville Division.

New Orleans, Louisiana, March 2, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**